LAURETTA SPEDDEN ET AL. *v.* EUGENE L. NORTON ET AL., TRUSTEES.

[No. 41, January Term, 1930.]

102

*Decided May 1st, 1930.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, DIGGES, PARKE, and SLOAN, JJ.

*Enos S. Stockbridge,* with whom were *Mullikin, Stockbridge & Waters* on the brief, for the appellants.

*J. Craig McLanahan* and *Frederick W. Brune,* with whom were *Semmes, Bowen & Semmes* and *France, McLanahan & Rouzer* on the brief, for the appellees.

URNER, J., delivered the opinion of the Court.

The appellants are life beneficiaries of a trust created by the will of Robert M. Spedden, who died on April 1st, 1911. Among the assets of the trust are 183 shares of the capital stock of the Edmondson Realty Company, having a par value of $100 per share. A cash "liquidating dividend" of fifteen per cent. of the par value of the stock has been declared by the board of directors of the company, following other similarly characterized dividends aggregating one hundred per cent. of the par value of the stock, and the principal question for decision is whether the latest dividend of that description belongs to the corpus of the trust or is payable as income to the beneficiaries for life.

The Edmondson Realty Company was incorporated in 1906 for the purpose, as stated in its charter, "of buying, selling, mortgaging, leasing, improving, disposing of or otherwise dealing in lands in this State." Its operations have been confined to the development and disposition of building lots from a single tract of 105 acres, in the suburbs of Baltimore, which it purchased for $215,000 about the time of its incorporation. In pursuance of the plan of sub-division adopted by the company, approximately one-fourth of the area was appropriated to streets and the remainder to building lots, except a few acres not suitable for such uses. The policy of the corporation was to improve the lots by the erection of dwelling houses through the agency of a construction company, under an agreement providing for a system of financing by the owning company and a division of the profits to be realized by the leasing of the properties and the sale of the reserved ground rents. After acting under such an agreement for a period of sixteen years, the Edmondson Company has proceeded independently since 1922 with the sale of the unimproved lots, and the land remaining in its ownership, when the liquidating dividend in question was declared, on June 4th, 1928, had been then reduced to nine or ten acres, having an estimated value of $55,000 or $60,000.

At the inception of the trust, in 1911, the stock of the Edmondson Realty Company was intrinsically worth about

$250 per share. That was the price received for certain shares of the stock sold in the course of administration by the executors of the will under which the trust originated, and the testimony in the record supports the valuation thus indicated.

From 1914 until 1927, at irregular intervals, the corporation declared a series of fourteen dividends ranging from six to twenty per cent. of the par value of its common stock and stated in the authorizing resolutions to be payable out of the corporate income. There was an issue of preferred stock, of the par value of $28,000, but that was redeemed in 1924. No question is involved as to an apportionment of the dividend under consideration as between the corpus and income of the trust, but the inquiry is whether as a whole it should be paid to the life tenants or should be held for the remaindermen.

The returns to the stockholders of the corporation were derivable only from the development and sale of the land in which its capital was invested. The profits realized from the increase in value produced by the corporation's activities in the improvement of the property, as distinguished from its normal enhancement in its undeveloped condition, were earnings of the corporate enterprise, and the dividends from that source would ordinarily be regarded as income of a trust to which they were payable. *Ex parte Humbird,* 114 Md. 627; *Washington County Hospital Assn. v. Hagerstown Trust Co.,* 124 Md. 1; *Krug v. Mercantile Trust & Deposit Co.,* 133 Md. 110. But as the sales of lots will eventually dispose of all the land bought with the company's capital funds, the unvarying declaration of income dividends from the proceeds of sales would fail to show proper concern for the protection of the capital value which the stock represents. The value of every lot, at the time of its sale, includes its original worth as augmented by the improvement methods of the development company, and as increased by causes which it did not originate. It is right, therefore, that suitable provision should be made for the liquidation of the stock's value on account of the depletion and ultimate exhaustion of the cor-

poration's primary capital investment. In 1911, when the trust came into existence, the actual value of the stock, in excess of its par value, was due in part to an unearned appreciation of the land since its purchase five years previously, and to an accumulation of undivided profits to which the record refers. An extraordinary dividend, declared after the testator's death from earnings realized before that event, would be allocated to the corpus of the trust under his will (*Thomas v. Gregg*, 78 Md. 545; *Quinn v. Safe Deposit & Trust Co.*, 93 Md. 285; *Atlantic Coast Line Dividend Cases*, 102 Md. 73; *Foard v. Safe Deposit & Trust Co.*, 122 Md. 476; *Washington County Hospital Assn. v. Hagerstown Trust Co.*, supra; *Northern Central Dividend Cases*, 126 Md. 16; *Miller v. Safe Deposit & Trust Co.*, 127 Md. 610; *Krug v. Mercantile Trust & Deposit Co.*, supra), and in a final liquidation an increment of land value not resulting from the prosecution of the corporate enterprise would be subject to a similar appropriation.

It has been suggested that the decisions last mentioned are not all in accord upon the proposition to which they are cited, so far as extraordinary cash dividends are concerned, but we think they are in essential harmony when the cases are considered with respect to their particular facts. The liquidating dividends thus far declared, including the one in controversy, have aggregated an amount much less than the real value of the stock in 1911 or at any subsequent period. There is no just reason, in this case, why such dividends should have been limited to the par value of the shares. They were all described, in the resolutions by which they were authorized, as "liquidating dividends out of capital assets," and the statement of fact and exercise of judgment by the directors on that subject should be respected by the courts in the absence of any sufficient ground of dispute as to the validity and propriety of their action. *Northern Central Dividend Cases; Quinn v. Safe Deposit & Trust Co., Atlantic Coast Line Dividend Cases; Thomas v. Gregg, supra.*

The basis on which the intrinsic value of the stock in 1911 was computed, in the report of the auditor and in the decree

of the circuit court, is said by the appellants to be incorrect, but the use of their suggested method of computation also produces a valuation beyond the total amount of the liquidation dividends. The decree rightly awarded the one in question to the corpus of the trust, but properly declined to comply with a request for a decision in advance as to the application of dividends which may be declared by the corporation in the future.

There were decretal provisions approving of the application of earlier dividends on the stock belonging to the trust estate, but they are not contested and need not be discussed.

> *Decree affirmed, the costs to be paid by the trustees out of the corpus of the trust estate involved in these proceedings.*

PARKE, J., concurs in the result.