GERTRUDE L. ZELL *v.* SAFE DEPOSIT & TRUST COMPANY

[No. 47, October Term, 1937.]

*Decided January 21st, 1938.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Randolph Barton, Jr.,* and *F. Fulton Bramble,* for the appellant.

*Harry N. Baetjer* and *Stuart S. Janney, Jr.,* for the appellee.

SHEHAN, J., delivered the opinion of the Court.

The question presented on this appeal arises on a case stated (Code, art. 16, sec. 221 *et seq.*) and is whether a certain dividend on the common stock of the Zell Motor Company, owned by A. Stanley Zell, deceased, and declared after his death, is apportionable between the testator's estate and Gertrude L. Zell, life beneficiary under a trust created by his will for her benefit, because of the provisions of article 93, section 305C, of the 1935 Supplement of the Code of Public General Laws of Maryland.

A. Stanley Zell, at the time of his death, on April 25th, 1935, was possessed of 18,533 of the 20,000 shares of stock of the Zell Motor Car Company. He left a will,

executed on January 19th, 1935. To certain employees of this company, he bequeathed 525 shares, and to Sidney S. Zell, his son, and to the Safe Deposit & Trust Company of Baltimore City, as trustee for Gertrude L. Zell, his wife, the remaining 18,008 shares, or 9,004 shares to each of them. In the will there were specific provisions authorizing the distribution in kind of this stock, or the liquidation of the company, or the sale of the stock and distribution of the proceeds. The executors of the will decided to distribute the stock in kind. The will is of considerable length, and its provisions, only in so far as they affect this case, need be here considered. The will has in it this significant provision:

"1st. If either my wife, Gertrude L. Zell, or my son, Sidney Stanley Zell, is surviving, then said share, which in any event I herein term for purposes of identification 'my wife's trust,' shall be paid over and transferred to the Safe Deposit and Trust Company of Baltimore, as Trustee.

"Said Trustee shall pay the net income therefrom, accounting from the date of my death, to my said wife during her life, and after my said wife's death, or after my own death, if my wife predeceases me, shall pay said income to my said son, Sidney Stanley Zell, until his death."

The Act of 1929, chapter 495, as codified in Code (Supp. 1935), art. 93, sec. 305C, reads as follows: "All rents, annuities, dividends and periodical payments in the nature of income, payable under the provisions of any will, deed or other instrument executed after the first day of July, 1929, shall, like interest on money lent, be considered as accruing from day to day, and shall be apportionable in respect of time accordingly, unless otherwise expressly stated by the instrument under which they are payable; but no action shall be brought therefor until the expiration of the period for which the apportionment is made."

It is obvious that this act alters the common law rule of apportionment as to rents, annuities, and dividends

and periodical payments in the nature of income, and gives to them the same attribute as has always been possessed by "interest on money lent" which accrued "from day to day," but the statute makes an important reservation in its provision that such rents, annuities, dividends, and periodical payments "shall be apportionable in respect of time accordingly, unless otherwise expressly stated by the instrument under which they are payable."

The question thus presented, for the consideration of the court, arises out of the record of dividends heretofore declared and in respect to a dividend of $9,266.50, $4,502 of which was applicable to the 9,004 shares of stock of said company held by the Safe Deposit & Trust Company of Baltimore, as trustee for Gertrude L. Zell. Mrs. Zell claims that the entire dividend on the 9,004 shares of stock should be paid to her, and the Safe Deposit & Trust Company of Baltimore, as executor, claims that this dividend should be apportioned as of the date of the death of A. Stanley Zell. The questions submitted in the special case stated for the determination of the court are:

"(a) Is the life tenant entitled to the entire dividend of $4,502.00 on the 9,004 shares of stock of the Zell Motor Car Company included in the one-half of the residue of the estate bequeathed in trust for her for life, on the theory that the dividend was paid after the death of the testator, and is not apportionable?

"(b) Is the said dividend apportionable as of the date of the death of the testator, and if so—

"(1) is the life tenant entitled to $1,578.54, being that proportion of the dividend of $4,502.00 on 9,004 shares of stock of the Zell Motor Car Company included in the one-half of the residue of the estate bequeathed in trust for her life, which the number of days (250) elapsed after the date of the death of the testator (April 25, 1935) to the stock of record date of the February, 1936, dividend (December 31, 1935) bears to the number of days (713) elapsed between the stock of record date of the January, 1934, dividend (January 17, 1934) and the

stock of record date of the February, 1936, dividend (December 31, 1935) ? or,

"(2) Is the life tenant entitled to $1,721.35, being that proportion of the said dividend of $4,502.00 which the number of days (286) elapsed after the date of the death of the testator (April 25, 1935) to the date upon which the February, 1936, dividend was payable (February 5, 1936) bears to the number of days (748) elapsed between the date the January, 1934, dividend was payable (January 18, 1934) and the date of the February, 1936, dividend was payable (February 5, 1936.) ?"

The last dividend paid on the stock of this company prior to the death of the decedent was on January 18th, 1934, and no further dividends were paid until that of February 5th, 1936, to stockholders of record on December 31st, 1935, of fifty cents per share. The records of the company show that these dividends were paid out of surplus earnings and profits. A comprehensive dividend sheet is in the record, disclosing that for several years past dividends of varying amounts have been irregularly paid as the company had the money in hand.

The appellant contends that the dividend in question was not of the character contemplated by the act, because it was not periodical, but in that respect was uncertain and indefinite, and therefore no basis as to time was established or could be properly ascertained upon which an allocation could be predicated, and, second, that it was expressly provided in Mr. Zell's will that there should be no apportionment.

The Safe Deposit & Trust Company's position is, that the Legislature made no exceptions but provided in express terms that "all rents, annuities, dividends and periodical payments in the nature of income" were included in the act.

There are no cases in this state directly upon this question. We will, therefore, give some consideration to the decided cases in other jurisdictions and to the history of the act under consideration, but, before doing this, the question arises whether the date of the declara-

tion of the dividend or the record date of the holding of the stock should be accepted in the apportionment or allocation between corpus and income. Again, there are no cases in Maryland deciding this point. It would seem, however, that the date of declaration should control, because on that date the relation of debtor and creditor arises between the corporation and the stockholders and no obligation arises to pay dividends until they are declared, and ordinarily they can or should only be declared out of earnings, and such earnings can be definitely determined on the declaration date and no other date can be so safely accepted. The present earnings and a declaration of dividend should coincide. This principle seems to be founded in reason, and has the support of cases in other states. In *Re Given's Estate*, 323 Pa. 456, 185 A. 778, and *Opperman's Estate*, 319 Pa. 455, 179 A. 729, and *Nirdlinger's Estate*, 327 Pa. 160, 193 A. 33, the Supreme Court of Pennsylvania held that, "as respects apportionment of cash dividend on stock held in trust, under common law, date of declaration of the dividend fixes rights of parties." And see 60 *A. L. R.* 703, where the authorities are collected and the conclusion is reached that "it is settled by a long line of authorities, that the date on which a cash dividend is declared governs, and unless by the terms in which it is declared, it is payable to stockholders of record on a specific date, it belongs to the owner of the stock at the time declared, although it may be payable at some future time. "In view of these authorities, we conclude that the time of the declaration of dividends should be one of the controlling dates in arriving at the allocation of dividends between corpus and income, unless otherwise authoritatively provided. Under the common law, and previous to the Apportionment Act of 1929, ch. 495, as contained in the Code provision, *supra*, dividends declared subsequent to the death of the testator were not apportionable and were payable as income to the life tenant and no part thereof was allocated to corpus. *Quinn v. Safe Deposit & Trust Co.*, 93. Md. 285, 48 A. 835; *Thomas v. Gregg*, 78 Md.

545, 560, 28 A. 565; and see, also, *France, Principles of Corporation Law*, p. 280, and *Northern Central Dividend Cases*, 126 Md. 16, at page 28, 94 A. 338, and cases there cited. These cases were all decided prior to the Act of 1929, ch. 495, and it is for us to determine how far that act has modified the established rule, as laid down in these cases, as it relates to or controls the payment of the various dividends above referred to and now under consideration.

It may be of interest, as well as helpful, to refer briefly to the history and derivation of this act. It is obvious that the common law rule, according to the conceptions of our Legislature, did not make for substantial justice, and the Act of 1929, ch. 495, was passed, with the design to establish a more equitable and just disposition or allocation of "all rents, annuities, dividends and periodical payments in the nature of income." This act, in its most important features, and in substance, is taken from the English act on apportionments, section 2 of which reads as follows: "From and after the passage of the Act, all rents, annuities, dividends and other periodical payments in the nature of income (whether reserved or made payable under an instrument in writing or otherwise) shall, like interest on money lent, be considered as accruing from day to day, and shall be apportionable in respect of time accordingly." And also the Massachusetts statute, General Laws, Tercent. Ed., ch. 197, sec. 27, which is as follows: "A person entitled to an annuity, rent, interest or income, or his representative, shall have the same apportioned if his right or estate therein terminates between the days upon which it is payable, unless otherwise provided in the will or instrument by which it was created; but no action shall be brought therefor until the expiration of the period for which the apportionment is made."

In the Pennsylvania statute the same general provisions are found as those found in the English, Massachusetts, and Maryland enactments. These provisions seem to possess a common design and purpose. Section

22 of the Fiduciaries Act, Pennsylvania, Purdon's Ann. St. sec. 634, was construed in *Re Nirdlinger's Estate, supra,* and is as follows: "All annuities, and all payments of rents, income, interest, or dividends of any real or personal property, directed by any will to be made during the lifetime of the beneficiary, or for the life or lives of another person or persons, or for a term of years, shall, like interest on money lent, be considered as accruing from day to day, and shall be apportioned to the date of the death of such beneficiary or of such *cestui que vie,* or to the end of such term of years."

The consideration to be accorded and the weight to be given to the English cases, which deal with an act which has been incorporated into our statutes, and where we have no authority to the contrary, has been defined by this court, through Judge Pearce, in the case of *Lavender v. Rosenheim,* 110 Md. 150, 72 A. 669, 671, as follows: "The legitimate inference is that, in adopting the precise language of this English statute, the interpretation given to it by the English court entered into our act of 1849, and is its present proper interpretation, in the absence of some judicial utterance to the contrary by our own courts, of which we have no knowledge or intimation."

With equal reason the same may be said with respect to statutes adopted from the states in this country. There are a number of English cases bearing upon this subject. To discuss all of them would give to this opinion unnecessary length. In considering the English act, and especially section 2, it seems to be the consensus of opinion in the English courts that, in order to allocate dividends under facts similar to those we have in this case, "there must be a payment which is declared or expressed to be made for and in respect of some definite period," and, if it were otherwise, the dividend could not be considered as accruing from day to day. *In re Jowitt,* L. R., 2 Ch. Div. 442; *In re Muirhead,* L. R., 2 Ch. 181; *In re Wakley,* 2 Ch. 502.

In the cases construing the Massachusetts law, we find

nothing contrary to the rule above laid down. See *Granger v. Bassett*, 98 Mass. 462; *Adams v. Adams*, 139 Mass. 449, 1 N. E. 746.

In Pennsylvania, more extended consideration of this question has been given than in other states.

In *Re Nirdlinger's Estate, supra*, it was stated: "When it has been shown that a corporation has pursued a uniform dividend policy over a period of time, making regular and periodic payments, so that the time and amount of future dividends may be forecast with a strong likelihood of accuracy, an ordinary dividend declared in pursuance of its policy must be apportioned in accordance with the legislative mandate contained in section 22 of the Fiduciaries Act. In such cases only is it justifiable to treat dividends 'like interest on money lent' and consider that they were earned on a *per diem* basis." See also cases there cited.

And in *Re Given's Estate, supra*, it is held that the operation of the law should be limited to such dividends as are regularly declared at uniform intervals and have been paid for years on that basis.

The New York statute, providing for apportionment of annuities, dividends, etc., has been held to apply only to instruments making dividends payable at fixed periods. In *Re Palmer's Estate*, 133 Misc. 159, 232 N. Y. S. 212, 213, it is said: " 'In the absence of any provisions in a contract of sale and purchase of stock, the law gives the dividends to the owner of the shares when the dividends are actually declared, and not to the owner of the stock before such declaration.' * * * It would seem that apportionment is proper only when applied to some instrument making the dividends payable at fixed periods. There was no definite time at which the Pullman Company paid its dividends."

In conclusion it should be observed that this ordinary cash dividend may not be designated as extraordinary or liquidating, nor can it be governed by the principles relating to such dividends. In the leading case of *Thomas v. Gregg*, 78 Md. 545, 28 A. 565, followed in *Baldwin v.*

*Baldwin,* 159 Md. 175, 150 A. 282; *Spedden v. Norton,* 159 Md. 101, 150 A. 15, and cases there cited, this question is fully considered. This not being an extraordinary dividend, the principle and the cases relating to such are not controlling.

In the particular case it would not be necessary to decide whether a dividend, to be included as apportionable under the statute, need be assured by an actual declaration before the testator's death or by some charter or contract undertaking, or whether it would suffice that a regular course of payments in the past seemed to give assurance of a declaration of anoher after the death, for in this case there was no assurance from either source. It was, as stated, only a dividend on the common stock of a corporation, which had paid dividends of varying amounts at irregular times as it had the money in hand.

It is our opinion that the entire dividend in question is payable to the appellant, Gertrude L. Zell, and the decree from which this appeal is taken should be reversed.

> *Decree reversed, and case remanded for the passage of a decree in conformity with this opinion, appellee to pay the costs.*

PARKE, J., dissents.