## Stokes' Estate (No. 2).

*Wills—Distribution—Stock—Dividend—Life tenants and remaindermen—Fall in market price of stock.*

1. In a contest between the remaindermen and life tenants under a trust created by will over the proper apportionment of a dividend declared on shares of stock in a company forming part of the trust fund, it is the intrinsic value of the shares to be ascertained from the amount in value of the assets at the death of the testator and at the time of the declaration of the dividend, which governs in the apportionment; a mere change in the market price of the stock after the declaration of the dividend is not in itself sufficient to show any impairment of that portion of the trust fund consisting of the stock such as would reduce its value below what it was when the trust began.

2. It is the intrinsic value of the shares, to be ascertained from the amount and value of the assets at the death of the testator, and at the time of the increase of stock, which governs in the apportionment of the surplus profits. The market value may aid in the ascertainment of the actual value, and is therefore properly received in evidence on that issue.

Argued January 15, 1913. Appeal, No. 263, Jan. T., 1912, by Fidelity Trust Company, Florence S. Stokes and R. Marshall Truitt, Trustees under the will of Samuel E. Stokes, deceased, from decree of O. C. Philadelphia Co., Jan. T., 1912, No. 184, dismissing exceptions to adjudication in Estate of Samuel E. Stokes, deceased. Before BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Exceptions to adjudication.

The facts appear in Stoke's Estate, No. 1, 240 Pa. 277, and in the following abstract from the notice to stockholders of the Lehigh Valley Railroad Company in connection with the dividend at issue in the case:—

The board of directors of the Lehigh Valley Railroad Company, at a meeting held January 11, 1912, authorized an appropriation of $6,060,800 out of the accumulated surplus of the company and the distribution of the same as a dividend on February 26, 1912, pro rata to such common and preferred stockholders of the Lehigh Valley Railroad Company as are recorded on the books of the company at three o'clock P. M., this day; such distribution being equivalent to ten per cent. of the outstanding capital stock of the company.

The board of directors of the Lehigh Valley Coal Company, at a meeting held January 11, 1912, authorized the organization of a new corporation, under the laws of New Jersey, to be called "Lehigh Valley Coal Sales Company," with an authorized capital stock of $10,000,000, consisting of 200,000 shares of the par value of $50 each, of which 121,216 shares, of the par value of $6,060,800 will be issued immediately, the balance being reserved for such future needs as may arise.

The Lehigh Valley Coal Company proposes to enter into a contract with the sales company, when organized, for the purpose of having the latter purchase and sell, during a time and upon equitable terms which will be fixed in said contract, such coal as, during said time, shall be mined, purchased, owned or otherwise acquired by the Lehigh Valley Coal Company and affiliated companies. It is further expected that under such contract the coal sales company will thereafter conduct generally all such matters as are now conducted by the Lehigh Valley Coal Company incident to the transporting and marketing of its coal. The time and terms of said contract have not been settled and cannot be settled until the company has been organized and the proper

measures have been taken for settling of terms and executing the contract.

Steps are now being taken for the incorporation of the Lehigh Valley Coal Sales Company, and the same will be organized at an early date.

The Lehigh Valley Coal Company has further authorized a subscription for said 121,216 shares of the capital stock of the Lehigh Valley Coal Sales Company by the common and preferred stockholders of the Lehigh Valley Railroad Company, to whom is given the privilege of subscribing for an amount equivalent to ten per cent. of their holdings as recorded on the books of the railroad company at three o'clock P. M., January 19, 1912.

The auditing judge, ANDERSON, J., awarded certain assets of the estate, consisting of a dividend on stock of the Lehigh Valley Railroad Company, amounting to $855 in the proportions of $87.50 to the life tenants under a trust created by the testator and the remainder to the principal fund. The Fidelity Trust Company, Florence S. Stokes and R. Marshall Truitt, trustees under the will of the decedent, filed exceptions to that part of the adjudication awarding the proportion of $87.50 of the dividend to the life tenants, which exceptions were dismissed in an opinion by LAMORELLE, J.

*Errors assigned* were in dismissing exceptions to adjudication.

*John G. Johnson,* for appellant.

*Charles C. Norris, Jr.,* for appellee.

OPINION BY MR. JUSTICE POTTER, April 14, 1913:

The opinion which has just been filed in the appeal of Anna S. Truitt, at No. 262, January Term, 1912, virtually disposes of the question here raised. The apportionment of the dividend there made preserves to the

remaindermen the full value of the trust estate, as nearly as it could be measured, under the evidence which was offered. The method pursued was that of taking the par value of the stock, and the surplus as it stood at the periods of comparison. For the purpose of a comparison of the real value of the assets, at the two periods, this method seems to be satisfactory. It is suggested in the argument in this case that the market price of the stock of the railroad company fell some $9.00 per share after the declaration of the dividend; but the dividend in itself was $5.00 per share, and would naturally cause that much of a reduction in the price of the stock. Aside from this, there was no evidence of any impairment of the assets of the company that would reduce their value below what it was when the trust began. The change in the market price of the stock was not in itself sufficient to show any such impairment of the trust fund. "It is the intrinsic value of the shares, to be ascertained from the amount and value of the assets at the death of the testator, and at the time of the increase of stock, which governs in the apportionment of the surplus profits. The market value may aid in the ascertainment of the actual value, and is therefore properly received in evidence on that issue": Smith's Appeal, 140 Pa. 344. Upon a question of values between life tenants and remaindermen, actual values are to be ascertained as nearly as possible: Moss's App., 83 Pa. 264.

We can see nothing in this record to indicate that the railroad company had anything to do directly with the proposed contract to be made between the Lehigh Valley Coal Company and the new sales company which was to be organized. Nor does it appear that the railroad company intended to give away any of its property or franchises. It does appear from the record that the dividend was declared from a surplus accumulated by the railroad company before the organization of the coal sales company. It was shown that the con-

tract with the latter was to be made by the coal com-
pany, not by the railroad company, and that such con-
tract had not only not been executed, but its terms had
not even been settled at the time. It was stated to the
railroad stockholders that the terms were to be "equita-
ble" and it nowhere appears that the coal sales company
was not to pay full value for any property or franchise
that might be transferred to it. The stockholders of
the railroad company received the dividend in cash, with
the added privilege of using that cash by a specified date
in buying the stock of the coal sales company at par.
The apportionment of the dividend which we have di-
rected to be made between the life tenants and remain-
dermen preserves to the latter the value of the estate
as it was created, and we cannot see that its substance
has been diminished below what it was at the date of the
testator's death. The decision in the preceding case
awards to the life tenant only the share of the dividend
which accrued or was earned after the death of the tes-
tator. The remainder of the dividend goes to the prin-
cipal, and the effect is to preserve to the corpus of the
estate all of the surplus which had accumulated prior to
the death of the testator. This, we think, is all that the
remaindermen can ask.

The assignments of error are overruled, and the ap-
peal is dismissed.