Estate of Alex. J. Cassatt, Deceased.

Submitted December 10, 1931.

Before TREXLER, P. J., KELLER, LINN, GAWTHROP, CUNNINGHAM, BALDRIGE and STADTFELD, JJ.

*Allen Hunter White* and with him *Robert Brigham* and *Ellis Ames Ballard* of *Ballard, Spahr, Andrews & Ingersoll,* for appellants.

*Louis M. Childs, II,* for appellee.

OPINION BY LINN, J., January 28, 1932:

These appeals, one, by a life tenant, the other, by the personal representatives of a deceased life tenant entitled to the income under a will, involve the same legal question. Testator died in 1906. In due course certain shares of capital stock of the Norfolk and Western Railway Company were awarded to trustees for purposes stated in the will. In 1929 the trustees sold 1,000 shares of that stock, 500 shares from the principal of each trust, at $196.50 a share. An account for distribution of the proceeds was filed. To assist the court, a stipulation of facts was made, showing, that after awarding sufficient cash to the principal of each trust to maintain its intact value (we omit the details agreed upon), there remained for distribution

income or profit in the sum of $43,833.81, this was awarded, to the life tenant $42,034.91, balance to principal $1,798.90.

Exceptions by the life tenants were dismissed. To understand the reason given by the learned court below for so dividing the income, instead of awarding it all to the life tenant, some additional statement of fact must be made. The parties agreed that "After costs and charges of operation, maintenance, depreciation, obsolescence, taxes, interest, rent and all other fixed charges, additions to the property, dividends to stockholders, and all other charges of all kinds whatever have been deducted and provided for, the income from the operation of the railway, from the death of the testator until May 2, 1929, has resulted in net earnings, which are earmarked as such, which were retained, and are still retained earmarked, by the railway company and carried to its free and unappropriated surplus, and unexpended. ...... In addition to the earmarked net earnings [so] set forth in paragraph 17 above, there are other earmarked net earnings which were earned from the death of the testator to May 2, 1929, which the railway company has expended, during the same period, for entirely new and permanent additions to the railroad property. These latter earmarked net earnings have been carried to the appropriated surplus of the railway company and are still retained there." Concerning one form of distribution of net earnings so invested, see Boyer's Appeal, 224 Pa. 144. It is also agreed that the amount involved in the exception, $1,798.90, is the amount of net earnings so invested apportionable to the shares sold.

The learned court below in its adjudication frankly stated that the application of the doctrine of Nirdlinger's Estate, 290 Pa. 457, would require that the entire income be awarded to the life tenant, but sought to

avoid the logical result of the application of the rule, by holding that the corporation had certain discretion in the management of its affairs; that this discretion could be, and in this instance was, finally exercised, as between company and stockholder, by appropriating the earnings in dispute, (in the words of the court), "for entirely new and permanent additions to the property. These earnings were by the process changed from earnings to productive capital. . . . . . . " But that position takes no account of the fact that the trustees have brought in for present distribution a sum which "reflects" (as was said in Nirdlinger's Est., supra) "substantially a distribution by the corporation of its accumulated earning" (p. 469); if the value of the principal is now increased by part of what (as conceded) would be income but for the bookkeeping of the corporation, the remainder men will receive what they are not entitled to, and the life tenants will receive less than the will gave them. Such a result cannot be supported.

It may be true, as stated in the brief, that the necessity for differentiating between unappropriated and appropriated surplus earnings on the railway company's books is found in the accounting requirements of the Interstate Commerce Commission; but, for present purposes, that is immaterial. The rule of Earp's Appeal, 28 Pa. 368, as since applied in Nirdlinger's Estate, supra, and other familiar decisions requires that what remains after awarding to the trust estate so much of the proceeds of the property sold as will restore the principal to its original value, must go to the life tenant.

The decree in No. 157 is reversed and the record is remitted for correction, costs to be paid out of the fund for distribution. A similar decree is ordered to be entered in No. 158.