## Daily's Estate.

Argued April 21, 1936. Before KEPHART, C. J.,
SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Michael J. Geraghty,* for appellants.

*Paul Maloney,* with him *Hugh J. Murtagh* and *Clifton Maloney,* for appellee.

44

OPINION BY MR. CHIEF JUSTICE KEPHART, June 26, 1936:

Michael Daily created a trust, the income of which was to be paid to his son James for life. At his death the trustees were "to sell, divide and to distribute" the principal or the proceeds thereof equally between his daughter-in-law and the descendants of herself and James Daily. The life tenant died leaving to survive him his widow, four children and a child of a deceased son. On the adjudication of the trust estate the principal question was whether an apportionment between life tenant and remaindermen should be made and, if so, the proper time therefor.

At the inception of the trust in 1913, it was composed in part of 200 shares in a very prosperous concern, the Diamond Match Company of Illinois, each share of which then had a book value of $90.67. This gave the trust estate an intact value of $18,134. In December of 1930, the corporation having a capital of $17,000,000 and a surplus of $13,638,200 or total assets of $30,-638,200, the book value of each share of the same stock was $180.22. At that time the corporation transferred all its assets to a new company formed under the laws of Maryland. In return for this property the Illinois corporation received all the stock of the Maryland company. At the same time another corporation, a holding company, was created in Delaware. To the Delaware corporation the Illinois company transferred all the stock of the Maryland company and it received in exchange all the shares of the Delaware corporation, amounting to 850,000 preferred shares with a par value of $25, and 680,000 shares of common stock having no par value but, as stated by the auditing judge, carried in capital account at $5 a share, and having a book value of $13.81 a share. The record shows the total book value of the Delaware corporation as $30,638,000.

The stock of the Delaware corporation was divided among the stockholders of the Illinois company by the

Illinois corporation and the latter was then dissolved and its stock cancelled. There was left the Diamond Match Company of Maryland, the operating company, and the Diamond Match Company of Delaware, a holding company. The trust estate received for its 200 shares in the Illinois company 1,000 shares of preferred stock in the Delaware holding company on the basis of a book value of $25 a share, and 800 shares of common stock on a similar basis of $13.81 a share, or an aggregate book value of $36,048. The trustee did not distribute this new stock but held it until the death of the life tenant, when the total book value of the 1,800 shares of common and preferred stock was $47,784. It is now to be distributed among the parties entitled thereto in kind.

The auditing judge held that an apportionment should have been made in 1930. However, in his distribution he neglected to consider all the elements of value that made up the book value of the Delaware holding company stock as received by the trust at that time. He failed to consider the whole admitted surplus account set up on the books of the holding company. In ascertaining the book value of the new issue and to sustain intact value the surplus account must be considered. See *Dickinson's Est.*, 285 Pa. 449; *Bullitt's Est.*, 308 Pa. 413. The court en banc held the apportionment should be made as of the end of the life estate; by this ruling the corpus suffered. It disregarded what was equivalent to a sale of all the assets, the receipt of the new stock and the value placed thereon by the corporation.

This is not the case of a life tenant receiving a portion of the undistributed earnings of a corporation during the continuance of the trust and while no dividend has been declared by the corporation. It is a case where a trustee must allocate to the trust estate as many shares of stock as are necessary to preserve the intact value at the time when the corporation, whose stock was originally in the trust, ceased to exist and its stock was replaced by stock of a new and different kind in a holding

company that owned the stock of a concern other than that in which the trust assets had been first invested and which had new assets infused through other investors. We have steadfastly held that remaindermen cannot be enriched at the expense of the life tenant and that, if there is a liquidation of the holdings of the trust by sale, the beneficiaries must receive earnings accumulated after the inception of the trust and represented in the sale price received: *Nirdlinger's Est.*, 290 Pa. 457; *McKeown's Est.*, 263 Pa. 78; *Cassatt's Est.*, 105 Pa. Superior Ct. 14. We have also stated that if a corporation liquidates or sells its assets and receives a sum representing in part accumulated profits, a trust estate holding stock therein must apportion the amount received under the general rule.

In *Buist's Est.*, 297 Pa. 537, we laid down four situations which might possibly effect the result of an opportionment between life tenant and remaindermen, and the present case, while it does not definitely come within any of the classes mentioned, so far partakes of the nature of a distribution of the assets of the corporation whose stock was held in trust or of a sale of the stock held in trust as to be within the substance of two of the rules. The various transfers made amount to a sale or liquidation of the assets of the trust.

Nothing we said in *Buist's Est.*, supra, conflicts with this conclusion; the facts of that case are so manifestly different that discussion is not necessary. Of course a merger is not a sale or liquidation of corporate property, but a consolidation of property, powers and facilities. Here the plan of recapitalization is very different from that in *Buist's Est.*, supra. Its net result was the creation of a new corporation acting under the laws of a different forum, and with new rights and new interests. This trust estate received in exchange for its shares in the old corporation 1,800 shares in this corporation. As a holding company it was separate and distinct from the operating company and must be treated as a separate

and independent corporation. See *Callery's App.*, 272 Pa. 255; *Fletcher, Ency., Corporations,* section 25. The shareholders of the holding company were not in any way members of the old company nor of the company to which it had transferred its assets, the Maryland Company. There was a complete change and separation in the corporate shares, so that what originally composed the corpus of the trust met with an unusual circumstance requiring apportionment: *Opperman's Est.,* 319 Pa. 455, 460.

The new entity in which the trust ultimately held shares was a creature so radically different from the old concern in its corporate structure, purposes and laws which controlled it, as to effect a complete change in the nature of the trust property held by the trustee. The evidence of that property [the shares of stock] was entirely different from that of the old company. It was in a new concern. Though carrying on its books earnings as surplus of the old company, this could be individuated for apportionment among the former Illinois shareholders as set up on the Delaware company's books. The new corporation was in itself of an entirely different structure. We might well say at this point that the corporate management could not defeat the life tenant's right to a share in the earnings by the circuitous method of reincorporation here adopted. Inasmuch as no intervening rights in the trust estate are prejudiced and the question is one not affecting the corporation, as such, but solely between life tenant and remaindermen, we adopt the finding of the auditing judge that the surplus had been set up on the books of the Delaware company as surplus, and we so treat it in the apportionment of this estate.

While cash did not pass to the trustee on this readjustment, it was similar to a sale or liquidation of the original trust res; there was, in effect, a sale by the trust estate of its stock for the stock of the holding company, which in turn owned the stock of the operating company.

Had the life estate ended when the transfer was completed there can be no doubt as to the division to be made. That the trust received stock makes no difference. There must be apportioned to the trust estate that number of shares of common and preferred, the total book value of which would equal the intact value at the time of the inception of the trust. The remainder of such stock must go to the life tenant.

It has been suggested that the life tenant's estate is too late in making this claim for an apportionment and appellants plead the statute of limitations as to all profits that accumulated prior to 1928. But the life tenant did nothing to estop him or his estate from claiming what is lawfully his. The equitable ownership of profits in a trust cannot be lost by mere inaction: *Bullit's Est.,* supra; *Wallace v. Wallace,* 72 S. E. 553. No apportionment could possibly have been made prior to 1930 and the fact that the life tenant, trustee, for his own benefit and protection held the shares together without dividing them, does not militate against the life tenant's estate when the time for division comes through an order of court.

As the intact value of these shares amounted to $18,-134 at the inception of the trust, and as the intact value of the shares in the holding company after the inauguration of the Delaware company was $36,048, the corpus is entitled to $18134/36048$ or 50.31% of both the common and preferred shares of the Diamond Match Company of Delaware received by the trust in 1931. The corpus should receive 503.1 shares of preferred stock and 402.4 shares of common stock. The life tenant is entitled to the remainder. As the stock is distributed in kind each of the shares of stock will take with it earnings since that date to the date of the life tenant's death.

The remaining assignments of error were fully considered and correctly decided by the court below.

The decree as herein modified is affirmed, costs to be paid by the estate.