SOPHIE LINDAU, ET AL., *v.* COMMUNITY FUND OF BALTIMORE, INC.

[No. 130, October Term, 1946.]

*Decided May 16, 1947.*

The cause was argued before MARBURY, C. J., DELA-
PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*J. Crossan Cooper, Jr.,* with whom was *Hunter H.
Moss* on the brief, for the trustees.

*George M. White,* with whom were *Page & White* on the
brief, for the Life Tenants.

*Ambler H. Moss,* with whom were *Semmes, Bowen &
Semmes,* and *William A. Fisher, Jr.,* on the brief, for the
Remaindermen.

476

MARBURY, C. J., delivered the opinion of the Court.

This Special Case stated under General Equity Rule No. 45, submitted for the determination of the Circuit Court of Baltimore City the question of the proper distribution between a life tenant and remaindermen of a stock dividend on stock held by a trustee under a deed of trust. From a decree apportioning this dividend approximately five per cent. to the life tenant and the remainder to the corpus of the estate, both the life tenant and the trustee appeal.

On December 19, 1921, Sophie Lindau and Clementine Lindau executed a deed of trust to the Safe Deposit and Trust Company, subsequently amended. By the terms of this instrument the net income from certain securities enumerated in Schedule "C" therein, or from their re-investments, was to be paid to the settlors for their joint lives and to the survivor. Upon the death of the survivor, the principal was to be disposed of in various ways, not necessary here to be related. The Community Fund of Baltimore, Inc., appellee here, has a contingent interest in the remainder under these provisions. On June 26, 1945, Clementine Lindau died: Sophie Lindau is still living and is one of the appellants.

On August 27, 1936, the trustee purchased as an investment for the corpus of Schedule "C" 140 shares of the par value of $10 each of the capital stock of the Fire Association of Philadelphia. This investment cost the estate $10,829. By resolution of the Directors passed on January 12, 1945, and of the stockholders passed on April 18, 1945, the Fire Association issued a twenty per cent. stock dividend to its stockholders of record on the latter date. This amounted to 40,000 shares of the par value of $10 each. The trustee here received 28 shares as the part of such stock dividend due on the 140 shares held in the Lindau trust.

In 1932, prior to the acquisition of the stock in the Lindau trust, the Fire Association had created a capital surplus of $2,445,101.96 by the cancellation of part of its capital stock. The capital stock, after this had been

done, and at the time of the purchase by the Lindau trust and until the declaration of the stock dividend, consisted of 200,000 shares of the par value of $10 each, or a total par value of $2,000,000. As of September 30, 1936, just after the purchase had been made, the surplus had increased to $10,099,044.60. As of March 31, 1945, just before the stock dividend was declared, the surplus amounted to $12,404,711.65. On December 19, 1944, a reserve was set up for the stock dividend by a transfer from the surplus account of $400,000. This reserve was apparently later transferred to capital. Based on these figures each of the 140 shares of the stock held in the trust had a book value on September 30, 1936, of $60.49 plus. After the payment of the stock dividend, each share had a book value of $61.68.

Except for the capital surplus of $2,445,101.96, all of the surplus came from earnings and profits derived from the usual business of the Fire Association. Cash dividends were paid each year on the stock during the period from 1932 to 1945, both inclusive. These were all paid from the surplus account. The earnings for the calendar year 1944, which is also the Association fiscal year were $955,071.47. For the entire year of 1945 they were $3,249,376.53. One-quarter of this is $812,344. The cash dividends paid for each of the years 1944 and 1945 were at the rate of $2.50 a share, or $500,000.

The deed of trust, as amended January 28, 1938, provided "* * * all stock dividends to the extent that they are paid out of current earnings for the current fiscal or preceding year shall likewise be treated as income as of the date of their payment; but all other stock dividends shall be treated as corpus of the trust estate."

The records of the Association disclose that no specific source was named when the stock dividend was declared. It would, perhaps, be unusual for this to be done, but whether this is so or not, as a fact it was not done. As the makers of the deed of trust had the undoubted right to determine what was to be done with

stock dividends, we have before us, at the outset, the question whether the Fire Association dividends, declared and paid under the circumstances above outlined, were or were not paid out of current earnings, either as a whole, or in part.

After the amendment to the Lindau trust of 1938, the General Assembly of Maryland adopted a Principal and Income act by Chapter 580 of the Acts of 1939, codified as Article 75B of the Code. This act provides that subject to such directions as the settlor might make with respect to apportionment between principal and income, all dividends payable in shares of the declaring corporation shall be deemed principal. This statute has no application here. By its terms, it does not apply to successive estates created prior to June 1, 1939. And even as to such estates, created after June 1, 1939, it only becomes effective if the settlor did not make some other disposition of stock dividends. It has not been overlooked, but we can find no basis for considering it in arriving at our conclusion.

The determination as between corpus and income of the allocation of extraordinary dividends has been the subject of much litigation as well as legislation. The Massachusetts courts early adopted a rule that cash dividends belong to income, and stock dividends belong to corpus. On the other hand, the Pennsylvania courts held that such a flat allocation did not do justice and, as far back as 1857 in *Earp's Appeal*, 28 Pa. 368, it was held that a stock dividend declared out of surplus had to be apportioned between corpus and income, because the surplus accumulated during the testator's lifetime was capital, but that which was accumulated thereafter was income. From that decision has evolved what is known as the Pennsylvania rule. That rule has been adopted by this court in a number of cases; beginning with *Thomas v. Gregg*, 78 Md. 545, 28 A. 565, 44 Am. St. Rep. 310, and including *Baldwin v. Baldwin*, 159 Md. 175, 150 A. 282, and *Heyn v. Fidelity Trust Company*, 174 Md. 639, 197 A. 292, 1 A. 2d 83, 739, as well as a

number of other cases cited and referred to in the opinions in these cases. In the Baldwin case, [159 Md. 175, 150 A. 285] which resembled in many ways the case before us, Judge Urner, in his usual lucid style, stated that the case which the court was then considering differed from previous Maryland cases "in the fact that the par value of the stock dividend does not exceed the earnings of the corporation for the period since the purchase of some of its shares of stock as an investment for the trust estate, but the actual value of the new stock, as representing a proportionate interest in all the corporate resources, was in excess of its accumulated earnings for the period to which we have referred." He then (159 Md. at page 183, 150 A. at page 285) quoted the following from *Matter of Osborne,* 209 N. Y. 450, 103 N. E. 723, 823, 50 L. R. A., N. S., 510, Ann. Cas. 1915A, 298, as to the method to be used in such cases: "The intrinsic value of the trust investment is to be ascertained by dividing the capital and the surplus of the corporation existing at the time of the creation of the trust by the number of shares of the corporation then outstanding, which gives the value of each share, and that amount must be multiplied by the number of shares held in the trust. The value of the investment represented by the original shares after the dividend has been paid is ascertained by exactly the same method. The difference between the two shows the impairment of the corpus of the trust. If the dividend is of money, the amount of that difference is to be retained by the trustee as capital and the remainder paid to the life beneficiary. If the dividend is in stock, the amount of the impairment in money must be divided by the intrinsic value of the shares of the new stock, and the quotient gives the number of shares to be retained to make the impairment good; the remaining shares going to the life beneficiary. Market value, good will, and like considerations cannot be considered in apportioning a dividend." In the Baldwin case, this court also said "The Pennsylvania rule was adopted by this Court

without qualification." (159 Md. at page 181, 150 A. at page 284.)

The Pennsylvania rule is that an extraordinary or stock dividend is presumptively payable to the party entitled to the income when the dividend is declared, that is, the life tenant. This is, however, a rebuttable presumption and upon proof that the payment of the whole dividend to the life tenant will impair the book value of the corpus, an allowance must be made out of the dividend to the corpus to compensate it and keep it intact. See *Stokes' Estate,* 240 Pa. 288, 87 A. 975; *McKeown's Estate,* 263 Pa. 78, 106 A. 189; *Mallory's Estate,* 285 Pa. 186, 131 A. 714; *Nirdlinger's Estate,* 290 Pa. 457, 139 A. 200, 56 A. L. R. 1303; *Graham's Estate,* 296 Pa. 436, 146 A. 111; *Chauncey's Estate,* 303 Pa. 441, 154 A. 814; *Cassatt's Estate,* 105 Pa. Super. 14, 158 A. 586; *Bullitt's Estate,* 308 Pa. 413, 162 A. 288; *Waterhouse's Estate,* 308 Pa. 422, 162 A. 295; *Scott on Trusts,* Vol. 2, page 1308; *Perry on Trusts,* 7th Ed., Vol. II, Sec. 545 a; p. 917.

In the Heyn case, Judge Offutt in an additional opinion delivered for the court after reargument reviewed a number of the Maryland and Pennsylvania cases and said, 174 Md. at pages 664, 665, 1 A. 2d at page 90, "Insofar as any general principle may be deduced from these cases, it is, that where after the beginning of a trust holding stock for successive beneficiaries, a dividend is declared on that stock, if the dividend is payable from profits accumulated in the trust period, whether payable in cash or in stock, it is income and payable for the use of the life tenant, but if paid from surplus accumulated prior to the trust period from profits, the sale of the company's property (where such sales are not in the ordinary course of its business) or from any other source, and the dividend lessens the book or dollar value which the shares had when the trust began, to the extent necessary to restore that value the dividend is to be treated as capital and paid into the corpus of the trust estate. And that the declara-

tion of the corporation as to whether the dividend represents earnings binds the parties to this case." In the case of *Powell v. Maryland Trust Co.*, 4 Cir., 125 F. 2d 260, Judge Soper in his dissenting opinion fully discussed the Maryland rule, the cases establishing it and the reasons for it (see pages 274-277).

Had the Fire Association declared its stock dividend to be paid from current earnings, there would be no question that such dividend was income and belonged to the life tenant. Had the Lindau deed of trust made no mention of an allocation of dividends, then the rule laid down in the Baldwin case, *supra*, would apply and the trustee would have had to ascertain what amount of the dividend would have to be applied to corpus, in order to maintain its book value as of the time of the acquisition of the stock. As that book value had increased the whole dividend would be applied to income. The makers of the deed of trust, however, established another date for the determination of the book value of the corpus by the provision above quoted that stock dividends ought to be treated as income to the extent that they are paid out of current earnings for the current or preceding fiscal year. The intention of the settlor controls. *Safe Deposit and Trust Company v. Woodbridge*, 184 Md. 560, 42 A. 2d 231, 159 A. L. R. 580. The fiscal year preceding the dividend was 1944, and, therefore, under the deed of trust, January 1, 1944, became the date as of which the value of the corpus must be maintained.

The record is silent as to the book value of the stock of the Fire Association on January 1, 1944, so that we are unable to determine this. This, however, is easy of ascertainment. When ascertained, it can readily be determined what number of shares, if any, must be allocated to corpus from the dividend of April 18th, in order to keep intact the book value of the shares held in the Lindau trust as of January 1, 1944. The value of what comes out of earnings will be measured by preserving this intact value, and the shares composing the

stock dividend, after deducting any which must be applied to the corpus for that purpose, will be awarded to the life tenant.

For the reasons stated, the decree will be reversed and the case remanded for the ascertainment of the book value of the stock as of January 1, 1944, and the passage of a decree in accordance with this opinion.

*Decree reversed and case remanded. Costs to be paid out of the estate.*