SAFE DEPOSIT & TRUST CO. OF BALTIMORE *v.* LULA H. BOWEN, ET AL.

[No. 131, October Term, 1946.]

*Decided May 16, 1947.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*George M. White,* with whom were *White & Page* on the brief, for the Life Tenants.

*J. Crossan Cooper, Jr.,* with whom was *Hunter H. Moss* on the brief, for the Trustee, appellant.

*Ambler H. Moss,* with whom were *Semmes, Bowen & Semmes,* and *William A. Fisher, Jr.,* on the brief, for the Remaindermen, appellees.

MARBURY, C. J., delivered the opinion of the Court.

This Special Case stated (No. 131, October Term, 1946) is similar to case No. 130 (*Lindau v. Community Fund,* 188 Md. 474, 53 A. 2d 409), just previously decided, in that it has to do with the disposition as between income and corpus of securities received by a trustee. It differs from that case, however, in two important respects. There is nothing in the deed of trust specially applicable to the circumstances of the case, and the securities are not stock dividends but are new securities received on a reorganization of a corporation. The court below decreed that all of the securities should be retained as part of the corpus of the trust. From that decree, the executor of the life tenant and the trustee appeal.

The trust in this case was created by the will of Charles F. Bevan, a resident of Baltimore City, who died December 23, 1917. The net income was to be paid to his wife during her natural life, and, after her death, the trust property was to be equally divided among his five children. The widow died on August 21, 1946. The Safe Deposit and Trust Company, which was also the substituted trustee of the estate, was appointed as the executor of Mrs. Bevan. At the time of the death of the testator he had 126 shares, of the par value of $100 each of the preferred stock of the Mt. Vernon-Woodbury Mills, Inc. In 1920 the trust estate received a stock dividend of 22 more, which, with the acquiescence of the life beneficiary, were added to the trust principal. This preferred stock provided for seven per cent. cumulative dividends. The corporation had only one other class of stock, the common, also $100 par value. From July 15, 1920 to April 1, 1946, no dividends were paid on the common stock, and there were arrearages of the preferred stock dividends amounting to $67 a share. On October 11, 1945, a readjustment of the capital structure of the corporation was recommended to the stockholders by the terms of which the holder of each share of the preferred stock was to

receive in exchange for and cancellation of such share and of all accumulated dividends thereon, $10 in cash, $50 principal amount of four per cent. debenture notes, three-quarters of a share of 6.75 per cent. prior preferred stock of the par value of $100 per share, and one-half of a share of common stock of the par value of $20 a share. The letter from the president of the corporation submitting the proposition to the stockholders shows that through ownership of $50 of the debenture notes the holder would receive $2 a year and through ownership of $75 of the new prior preferred stock he would receive $5.06 a year, or a total of ,$7.06 on a par value of $125 as against $7 a year on a par value of $100 of his old holdings. This proposal was accepted by more than ninety-five per cent. of the preferred stockholders, including the trustee in the, Bevan estate, who, in exchange for cancellation of its 148 shares of preferred stock and the accumulated dividends thereon received $1,480 in cash, $7,400 principal amount of debenture notes, 110 shares of prior preferred stock and 74 shares of common stock. It is agreed by all parties in this case that the cash distribution was taken from the earnings of the company, and constituted income and not corpus, so any question as to this will not be considered by us, and we express no opinion about it. It is also not contended (and could not be contended) that the Principal and Income Act, Code, Art. 75B is applicable since the trust was created prior to 1939.

The executor of the life tenant and the trustee, both urge that the recapitalization should be treated in part as payment of the accumulated dividends and, therefore, the securities received are similar to stock dividends. They contend that the new securities were exchanged for not only the stock, but also for the accumulated dividends in arrears. They show that the aggregate par value of the cash and securities exceed by $45 the par value per share of the stock surrendered. They therefore argue that the preferred stockholders are not entitled to receive more than par for the exchange of their

stock. It is undeniable that if the situation is to be treated as analogous to a stock dividend, then the Pennsylvania rule applied by this Court in many cases and specifically approved in *Lindau v. Community Fund, supra,* would compel an apportionment. It therefore becomes of primary importance to determine what this reorganization was.

It was apparently intended to wipe out the arrearages in dividends not yet declared, an obligation which, it was stated, could not be taken care of by the company for a long period in the future. It was also intended to provide some income for preferred stockholders which the company would be able to pay, and to establish a possible basis upon which some dividends might be paid on the common stock. It did not increase the preferred stock held, nor did it pay the remaining dividends which had not been declared. It gave in return for old preferred stock and the right to receive such dividends when and if declared, certain new securities of a different nature and with different characteristics.

It has been the policy of this Court to look to the substance and intent of the action of the corporation as manifested by its votes or resolutions to determine whether dividends represent earnings or capital. *Atlantic Coast Line Dividends Cases,* 102 Md. 73, 61 A. 295; *Northern Central Dividend Cases,* 126 Md. 16, at page 28, 94 A. 338. An examination of the record in the case before us does not show that the transaction between the corporation and its preferred stockholders has any of the attributes of a dividend. It was not so declared. The exchange was an offer made by the corporation, acceptance of which was optional by the stockholders. What the company was doing was not paying anything on account of the $67 a share deficit. It was trying to wipe it out entirely, and to have its preferred stockholders start over again with some assurance that they would receive regular payments in the future. The amount of the capital stock of the corporation was de-

creased and not increased as would have been the case had a stock dividend been declared.

While this Court has adopted the Pennsylvania rule, as to the apportionment of dividends, it has not followed the Pennsylvania rule in cases of sale. *Smith v. Hooper*, 95 Md. 16, 51 A. 844, 54 A. 95. Compare *Nirdlinger's Estate*, 290 Pa. 457, 139 A. 200, 56 A. L. R. 1303; *Daily's Estate*, 323 Pa. 42, 186 A. 754, 757; *Fisher's Estate*, 344 Pa. 607, 26 A. 2d 192; *King's Estate*, 349 Pa. 27, 36 A. 2d 504, 153 A. L. R. 488, and 355 Pa. 64, 48 A. 2d 858. In the first appeal in the King Estate there were dividends in arrears on the preferred stock held by the trustee. As a result of a reorganization each shareholder received new securities in exchange for each share of the old stock held. The court said that this was in no sense a payment of a dividend on the arrearages, but was an exchange in which the value of the arrearages was considered. It specifically denied the contention of the life tenant that under such circumstances she was entitled to part of the proceeds. In the second appeal the court applied the Pennsylvania rule of apportionment to any stock which had been sold. This Court has made no such distinction. In the case of Smith v. Hopper, the trustees, by virtue of the acquisition of two companies in which they held stock by another corporation, received shares of stock in the latter concern, both preferred and common, and also shares of stock in yet another corporation and some money in cash. They then sold the common stock which they had received and finally had a large amount of cash, a number of shares of preferred stock in the purchasing company and some stock in another company. The operation was very successful, and the value of the new securities and the cash greatly exceeded the original trust investment. This Court said, speaking through Chief Judge McSherry, that the question was whether the increase was income or dividends, and in that respect differed from earlier cases which passed upon, not what was income or dividends, but to whom income or divi-

dends belonged. The court held that neither the cash nor the new stock was in any sense dividends or income, and that it belonged to the corpus of the trust estate. In the case of *Girdwood v. Safe Deposit & Trust Co.,* 143 Md. 245, 122 A. 132, this Court held that neither new stock subscribed and paid for out of the trust fund, nor the proceeds of the sale of such stock was income belonging to the life tenant, but that, on the contrary, it belonged to the corpus of the estate. The Maryland rule that proceeds of sale or increase in the value of corporate stocks is regarded as capital gain is generally approved. See *Scott on Trusts,* Sec. 235.12, *Restatement Trusts,* Section 236, comments q and y.

The appellants rely strongly on three out-of-state cases. These are the Pennsylvania case of Fisher's Estate, *supra,* a Delaware case, *Cox v. Sellers,* Del. Ch., 28 A. 2d 679, and an Alabama case, *Title Guarantee Loan & Trust Co. v. Woodward,* 238 Ala. 304, 191 So. 363, 129 A. L. R. 1301. In the Fisher case, the court adopted the Pennsylvania rule on proceeds from sales to an extent which is not the law of this state, and that was the basis for its decision. The Cox case as finally decided, Del. Sup., 33 A. 2d 548, although based largely upon the language used by the testator in his will, held that in a corporate dissolution, payment made to holders of cumulative preferred shares in accordance with a contractual preference was not technically a sale, but that essentially it was such a sale, and would so be regarded in carrying out the testator's will. The cash payments and the new shares of stock issued were both held to belong to the corpus. The Alabama case involved a plan of reorganization under the bankruptcy act. The holders of old 6 per cent. preferred stock received 3½ shares of new common stock and $125 in cash. The court held that in the exchange, the dividends in default were calculated and included in the plan of reorganization and an additional sum was paid to the preferred stockholders to make good the difference between two classes of preferred stock in the matter of default in

the dividends. The court held under these circumstances this new stock should be apportioned between the corpus and the income. We do not think the situation in this case is comparable with the one before us.

There would be practical difficulty in adopting any scheme of apportionment by which the intact value of the corpus could be maintained. The securities exchanged were all new or changed issues with different interest rates and characteristics, including notes and redeemable preferred stock. There is no feasible way by which these can be so divided as to make sure that the corpus will receive enough in all respects (and no more) to insure that it is not impaired. The par values are not a true criterion of the real values. Some cases which apportion securities received in payment of deferred dividends or give such securities to the life tenant involve situations where the old security is retained. They are thus clearly distinguishable from the case before us. One such case is *Re Smith's Will Trust,* 155 L. T. (N. S.) 248.

It is our conclusion that the transaction in this case was the exchange of one type of securities for another. It was in no sense similar to the declaration of a dividend. It was more in the nature of a sale. We think none of the new securities were intended as payment in whole or in part of the unpaid dividends. As a result, the new securities in their entirety belong to the corpus of the estate and the decree of the Chancellor to that effect will be affirmed.

*Decree affirmed, costs to be paid out of the estate.*