## Kenny Estate

Before Klein, P. J., Bolger, Lefever, Saylor and Shoyer, JJ.

*John V. Doughten,* for exceptant.

*Schubert & Schubert,* contra.

LEFEVER, J., April 26, 1957.—Testatrix, Mary C. Kenney (incorrectly designated in these proceedings as Mary C. Kenny), died in 1919, leaving a will, whereby she established a trust in the sum of $5,000. She directed that: "Said trustee . . . shall pay unto Thaddeus Durkin, the crippled son of Thomas Durkin . . . the entire income arising from said principal sum, during his lifetime." She provided further that trustee should "expend any part or all of said principal sum in addition to the income thereof for the well being and care of said Thaddeus Durkin as said trustee shall deem best", and "Upon the death of the said Thaddeus Durkin, said trustee shall see that he is properly buried according to his station in life and shall use the unexpended income of the trust and if necessary, any and all of the principal thereof to defray the funeral expenses and income for the purchase of a burial lot". She concluded: "The principal sum remaining together with any undistributed income shall be divided in equal shares among such of the brothers and sisters of the said Thaddeus Durkin as shall survive his death. . . ."

Trustee regularly paid the net cash income from the trust to Thaddeus Durkin until his death on September 9, 1955. However, trustee did not distribute to life tenant any portion of the stock dividends received by him during the administration of the trust. It now appears that the 24 shares of Insurance Company of North America, awarded to the trustee at the inception of the trust, had increased to 176 shares as a result of successive apportionable stock dividends and rights to subscriptions of stock, the first of which

was issued on September 28, 1928, and the last on January 2, 1954. The said 176 shares of stock of the Insurance Company of North America were sold by the trustee on February 15, 1956, for the net sum of $15,725.71. It is agreed by all interested parties that under proper apportionment $8,341.90 is allocable to income.

The trustee paid the funeral expenses of the life tenant which amounted to $1,151. Notwithstanding the terms of the will, which directed the trustee to pay therefor out of unexpended income or, if necessary, out of the principal, the executor voluntarily reimbursed the trustee, for these funeral expenses. However, the executor made claim to all unexpended income, including the said $8,341.90 allocated to income as a result of the agreed apportionment of the stock of the Insurance Company of North America. The auditing judge awarded the disputed income to the executor of the life tenant's estate.

Paul Durkin, one of the remaindermen, contends that all income now in the hands of the trustee, including that arising from the apportionment constitutes "undistributed income" to which the remaindermen are entitled by the terms of the will. Therefore, he filed exceptions to the original adjudication. The case was referred back to the auditing judge for further hearing; thereafter, he filed a supplemental adjudication again awarding the disputed income to the executor of the life tenant's estate. The case is now before the court on exceptions to the supplemental adjudication.

It is clear from an analysis of the will that testatrix' primary beneficial object was Thaddeus Durkin, whom she described in her will as "the crippled son of Thomas Durkin". This is apparent from her direction to trustee (1) to pay to him "the entire income arising from said principal sum"; (2) to use principal for his "well being and care", and (3) to use "un-

expended income" and if necessary "principal" to pay for his funeral expenses and purchase of a burial lot. Only that which remained was to go to his surviving brothers and sisters: It would be difficult to express more unequivocally an intention primarily to benefit Thaddeus Durkin. This was an absolute life estate. In addition, testatrix was willing to have the entire trust corpus expended, if need be, to provide, maintain and care for life tenant during his lifetime and burial thereafter. This basic intent prevails and the absolute gift of income for life was not cut down by the subsequent language: "The principal sum remaining together with any undistributed income shall be divided . . ." among the remaindermen.

It is significant that the income in dispute was received by the trusteee over a period of 26 years, viz., from 1928 to 1954. Surely, testatrix intended him to receive his lawful share of these apportionable items as they were received by the trustee. In any event, as the learned auditing judge correctly observed in his original adjudication: "The right to an apportionment is not lost by the mere failure of the life tenant to have made claim thereto. The personal representative of the estate of the deceased life tenant may therefore claim an apportionment. Daily's Estate, 323 Pa. 42 (1936)." See also Mallory's Estate, 285 Pa. 186, 189.

Language similar to the crucial words in the instant will has twice been interpreted by this court adversely to exceptant's position: Garrett Trust, 70 D. & C. 279 (1950) ; Coffman's Estate No. 2, 31 D. & C. 93 (1938). See also III Scott on Trusts (1956) §253 A. These cases rule the present case.

Judge Klein in his adjudication in Coffman's Estate, supra, which was adopted by the court en banc, aptly stated at page 96, et seq.:

"The law is established beyond question in Pennsylvania that where words are used in a will sufficient

to vest an absolute estate, such interest is not to be cut down by subsequent provisions, unless the testator has indicated a clear intent to reduce the estate previously given [citing and quoting from Garrett's Estate, 321 Pa. 74] . . .

"There is no question that the estate given to Robert Helm is an absolute life estate. There is serious question, however, as to the exact meaning of the words 'together with any undistributed accumulations of income thereon', which accompany the gift over [of] the remainder.

"We can only conjecture as to what the testatrix meant by this language. She may have meant, as contended by the charities, that any income in the hands of the trustee, which was not actually distributed at the moment of the life tenant's death, should become part of her residuary estate; or she may have meant income due and accrued, but not collected; or she may have meant income accrued but not yet due. And in the absence of language clearly indicating an intent to reduce the absolute life estate previously given and the extent of such reduction, we must follow the accepted rule and hold that the entire income belongs to the life tenant.

"If we were to find that the language of the will indicated a clear intention to reduce the father's absolute life estate by the amount of the 'undistributed accumulations of income' at his death, we would in effect countenance an accumulation, at least by indirection, in violation of section 9 of the Act of April 18, 1853, P. L. 503, since the life tenant in the present case was over 21 years of age. This we cannot do either, as an accumulation is void no less where it results by indirection than where it is expressly ordered: Weinmann's Estate, 223 Pa. 508 . . ."

The third paragraph above was quoted with approval in McManus Estate, 361 Pa. 122, 125.

We are all of the opinion that there was no overriding intention of testatrix to cut down the interest of Thaddeus Durkin to something less than an absolute life estate. Accordingly, the learned auditing judge properly awarded the income to the executor of the deceased life tenant.

The exceptions are dismissed, and the adjudication, as supplemented by the supplemental adjudication, is confirmed absolutely.